IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES LYNCH and
SHANNON LYNCH,
individually and on behalf of
PARKER LYNCH and THE ESTATE
OF PARKER LYNCH                                                                PLAINTIFFS

V.                             CASE NO. 5:23-CV-5015

LEECO STEEL, LLC;
D & F EQUIPMENT SALES, INC.; and
ARKANSAS MACHINE WORKS, INC.                                                   DEFENDANTS

## OPINION AND ORDER

Before the Court are the parties' responses (Docs. 131, 132, 133) to the Court's text order (Doc. 127) directing the parties to file a position statement as to which state's substantive law applies to the claims pending in this Court. For the reasons stated below, the Court finds that Arkansas substantive law applies to those claims.

### I.   BACKGROUND

Plaintiffs James and Shannon Lynch are the parents of Parker Lynch, deceased. Plaintiffs bring this case as wrongful death beneficiaries and as the representatives of Parker's estate. Plaintiffs allege that their son's death from a gunshot wound was caused by the defective body armor he was wearing at the time he was shot.

Plaintiffs originally filed this case in February 2021, in the United States District Court for the Western District of Texas, case number 6:21-CV-130. Since then, it's been severed into three separate cases, with three defendants remaining in Texas, one defendant in the United States District Court for the Western District of North Carolina, case number 3:23-CV-00029, and three defendants in this Court. In fall 2022, the latter

four defendants were briefly transferred to the United States District Court for the District of Arizona, case number 2:22-CV-01807.

The three defendants in this Court are D & F Equipment Sales, Inc., Arkansas Machine Works, Inc. ("AMW"), and Leeco Steel, LLC. Plaintiffs allege that D & F and AMW cut and bent the steel used to make the body armor at a factory in Arkansas.[1] Leeco is alleged to be an Illinois-based distributor for Nucor Corporation, the steel's original manufacturer and the sole defendant in the North Carolina case. The defendants in the Texas case include James Tames, d/b/a Black Diamond Body Armor, and Black Diamond JA LC. Collectively, Black Diamond is alleged to be the Texas-based assembler and retail seller of the body armor that Parker purchased.[2] Also in the Texas case is defendant Tuff Coat LLC, d/b/a Bullet Liner NWA, LLC, an Arkansas company alleged to have applied a spray coating to the body armor.

Plaintiffs allege in their First Amended Complaint (Doc. 140) that Leeco sourced sheets of MIL-A-46100E steel from Nucor in North Carolina. Leeco is alleged to have advertised the steel as being military grade and able "to stop high velocity projectiles." *Id.* at ¶ 11. Leeco is further alleged to have recommended and expressly warranted to Black

---

[1] Counsel for AMW and D & F informs the Court that, pursuant to the Court's text order (Doc. 127), "counsel for Plaintiff and D & F Equipment Sales, Inc. met and conferred regarding whether D & F is a proper party to this action. They concluded that D & F is a proper party to the action. While an employee of Arkansas Machine Works, Inc. cut the steel at issue (as alleged in the Complaint), it was an employee of D & F that bent the steel, using equipment owned by D & F. All cutting and bending of the steel occurred at the Springdale, Arkansas facility which D & F owns (and a portion of which is leased by Arkansas Machine Works)." (Doc. 131, p. 2 n.1).

[2] According to Black Diamond's Answer, "At the time that Black Diamond obtained the specific steel plate at issue in this lawsuit, Black Diamond had its headquarters and principal place of business in Arkansas." (Doc. 32, ¶ 122).

Diamond that the MIL-A-46100E steel was appropriate for use in the level-4 body armor[3] that Black Diamond sought to produce, even though the steel was only rated to stop high velocity projectiles when mounted at a 30-degree angle, not the 90-degree angle of body armor. Relying on Leeco's recommendation and warranty, Black Diamond ordered six sheets of MIL-A-46100E steel from Leeco. Leeco shipped the six sheets to AMW in Springdale, Arkansas, where AMW and D & F cut and bent the steel sheets into body-armor shaped pieces. Tuff Coat then applied a spray coating. Black Diamond received the completed steel pieces, assembled the body armor, and listed it for sale. Plaintiffs allege that Black Diamond "warranted that the MIL-A-46100 steel could stop, among other rounds, a military grade 5.56 x 45 M855 bullet, commonly known as a 'green tip' bullet." *Id.* at ¶ 21.

In early 2019, Parker ordered the body armor over the phone from Black Diamond, and Black Diamond shipped the body armor to Parker's residence in Arizona. After receiving the body armor, Parker and two friends went to the Arizona desert to test it. First, without anyone wearing the body armor, the men shot the back panel with a .223 red tip bullet. It did not penetrate the armor. Next, Parker put the body armor on, and his friend fired a .223 Full Metal Jacket bullet at the front panel. The bullet penetrated the armor and pierced Parker's liver, killing him.

Plaintiffs allege that Leeco is liable for Parker's death under theories of strict products liability, negligence, failure to warn, and breach of warranty because the steel

---

[3] Plaintiffs explain that "[b]ody armor is deemed to be 'Level-4' by using the National Institute of Justice ('NIJ') standard. To qualify as Level-4 Body Armor, the armor must be capable of stopping a .30 Caliber Armor Piercing Billet at a 90-degree angle to the bullet strike." *Id.* at ¶ 14.

that the body armor was made from was marketed, recommended, and sold in an unreasonably dangerous condition for its intended use as level-4 body armor. Plaintiffs allege that AMW and D & F are liable for Parker's death under theories of strict products liability, negligence, and breach of warranty because they improperly cut and bent the steel, making it unsafe for use as body armor.

## II. DISCUSSION

Plaintiffs originally pleaded their case under the assumption that Texas substantive law applied to their claims. Now, Plaintiffs assert that Arkansas law applies, and Defendants AMW and D & F agree. Defendant Leeco asserts that North Carolina law applies, or, in the alternative, Arkansas law. The Court finds that Arkansas law applies to Plaintiffs' claims in this Court.

In a diversity case, this Court applies Arkansas's choice-of-law rules.[4] *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). Under Arkansas's choice-of-law rules, if the dispute sounds in tort, the Court first considers the doctrine of *lex loci delicti*—"law of the place where the wrong took place"—and then considers the five Leflar factors: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the

---

[4] This is true despite Plaintiffs originally filing this case in Texas. The Western District of Texas transferred this case to the District of Arizona to cure a lack of personal jurisdiction under 28 U.S.C § 1631 and improper venue under 28 U.S.C. § 1406. The District of Arizona then transferred this case to this Court under § 1631 to cure a lack of personal jurisdiction. Section 1631 provides that upon transfer, "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." Courts interpret this language to mean that the choice-of-law rules of the transferee court apply. *See Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 796 (5th Cir. 2021). The same goes for transfers done to cure improper venue under § 1406. *Id.*

forum's governmental interests, and (5) application of the better rule of law." *Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251 (2006), *overruled on other grounds by Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84 (2019).

The doctrine of *lex loci delicti* asks which state has the most significant relationship with the action. *Ganey*, 366 Ark. at 251. When the alleged tort and injury both occur in the same state, that state likely has the most significant relationship to the action. *See Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 626 (1977). However, in a products liability action, the injury and a defendant's tortious conduct often occur in different states. In that instance, the Arkansas Supreme Court has explained that "[i]t is simply not enough that the accident occurred in" a particular state. *Ganey*, 366 Ark. at 252. In *Ganey*, the plaintiff was injured in an ATV accident. Despite the accident occurring in Arkansas, the court found that Louisiana had the most significant relationship with the plaintiff's claims because the "ATV was sold and acquired in Louisiana, the injured party resides in Louisiana, and the allegations supporting the Ganeys' causes of action, i.e., negligence, breach of warranties, products liability, and civil conspiracy, involve actions that occurred outside this state." *Id.* at 251–52.

Here, Plaintiffs reside and the accident occurred in Arizona. The allegedly tortious acts of AMW and D & F occurred in Arkansas. Plaintiffs allege that the steel was defectively manufactured by Nucor in North Carolina and negligently marketed and sold by Black Diamond in Texas. The First Amended Complaint does not specify where Leeco's allegedly tortious acts occurred, though the company is based in Illinois.

While many states have a connection to this case, the Court finds that Arkansas has the most significant relationship to the claims presented in this Court against these

Defendants. *See id.* at 252. Two of the three defendants in this Court operate in Arkansas and are accused of committing tortious acts in Arkansas that caused Parker's death. In addition, the parties agree that Black Diamond, now a Texas company, was based in Arkansas when it ordered the steel from Leeco, and Tuff Coat is alleged to have negligently applied a spray coating to the steel in Arkansas.

One could argue that Arizona—where Plaintiffs reside and Parker was killed—also has a strong connection to this case, but no party makes that argument. Plaintiffs, AMW, and D & F agree that Arkansas has the most significant relationship with this case, while Leeco argues primarily for North Carolina and secondarily for Arkansas. The Court disagrees that North Carolina has the most significant relationship to this case because—while the steel originated in North Carolina and Nucor's tortious acts are alleged to have occurred there—the three Defendants in this Court neither reside in nor committed any tortious acts in North Carolina.

The Leflar factors confirm that Arkansas law is the appropriate law to apply in this case. The first factor—predictability of results—"is not implicated when an action arises out of an accident." *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001). The second factor—the maintenance of interstate order—slightly favors Arkansas because the state has a greater, though not overwhelming, connection to the facts of this case than Arizona and North Carolina. *See Hughes*, 250 F.3d at 621. The third factor—simplification of the judicial task—is not relevant because "[a] federal district court is faced almost daily with the task of applying some state's law other than that of the forum state, and it is equally capable of resolving the dispute under" any state's law. *Id.* at 620. The fourth factor—advancement of the forum state's governmental interests—slightly favors

Arkansas because Arkansas "has at least some interest in protecting nonresidents from tortious acts committed within the state." *Id.* at 621. The fifth and final factor—application of the better rule of law—favors Arkansas over North Carolina because Arkansas's comparative negligence rule "is a fairer and more economically equitable standard of liability than that of the common-law rule of contributory negligence," *Wallis*, 261 Ark. at 629, and North Carolina is one of the few jurisdictions in the United States that still employs a contributory negligence regime, *see Davis v. Hulsing Enters., LLC*, 370 N.C. 455, 458 (2018).

### III.   CONCLUSION

For these reasons, the Court finds that Arkansas substantive law applies to Plaintiffs' claims in the First Amended Complaint. Any party may re-raise the choice-of-law issue at a later stage of this case if evidence is uncovered that would materially alter the Court's analysis in this Order.

**IT IS SO ORDERED** on this 5th day of June, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE