EXHIBIT "2"

*Real-World Forensic Engineering, LLC*        806-368-9811                ExpertEngineering.com



# REAL-WORLD FORENSIC ENGINEERING, LLC
## EXPERTS IN ENGINEERING SINCE 1988

2309 19th Street, Lubbock, TX 79401
Office: 806-368-9811, Fax: 806-368-9812
Info@ExpertEngineering.com

# Forensic Engineering Investigation of Deficiencies Contributing to Failure of a Steel Panel to Serve as Body Armor

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Submitted to:

Matthew Marzak
Maverick Ray & Associates
811 West 24th Street Suite 300
Houston, Texas 77002

Ranchor Harris
Roberts & Harris P.C.
1784 Heritage Center Drive Suite 204E
Wake Forest, NC 27587

Jahan Rasty, Ph.D., P.E., DFE, MBA, CFEI, CFII

8/18/23

THIS REPORT IS DESIGNATED ***CONFIDENTIAL*** IN ITS ENTIRETY AND CONTAINS ***CONFIDENTIAL AND/OR ATTORNEYS'-EYES-ONLY*** INFORMATION

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

# Table of Contents

I.      Executive Summary ................................................................................................................3

II.     Background ..............................................................................................................................6

III.    Assignment and Scope of Work ............................................................................................7

IV.    Statement of Qualifications Related to Scope of Work Performed .....................................8

V.     Information Considered ........................................................................................................10

VI.    Basis of Opinions ..................................................................................................................10

VII.   Analysis and Observations ...................................................................................................11

VIII.  Conclusions and Opinions ...................................................................................................30

IX.    Disclaimer .............................................................................................................................30

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

# I.      EXECUTIVE SUMMARY

1. Around January 26, 2019, Parker Lynch received two steel panels from Black Diamond Body Armor for use as the front and back panels of a bullet-resistant vest. Reportedly, the steel panels were manufactured by Nucor Corp., distributed by Leeco, and machined to the desired size at Arkansas Machine Works prior to sale by Black Diamond to Mr. Lynch Mr. Lynch subsequently tested the ballistic resistance of the back panel of the vest via firing a test shot at the back panel of the vest, which was able to stop the bullet from penetrating the panel.

2. Having observed the back panel successfully stop the penetration of the bullet fired at close range, Mr. Lynch, in cooperation with another person, proceeded to test the front panel. This second person shot at the front panel of the vest while it was being worn by Mr. Lynch. Unfortunately, the front panel failed to stop the through-thickness penetration of the bullet, which subsequently struck Mr. Lynch, resulting in his fatal injuries.

3. RWFE was retained by Maverick Ray & Associates to perform a forensic engineering investigation into the most significant factor(s) contributing to the failure of the front steel panel to resist through-thickness penetration of the fired bullet. Specifically, it was sought to determine whether manufacturing-related material property deficiencies, the type of bullet / rifle that was used, or improper material selection, or some combination of these parameters contributed to this incident on a more-likely-than-not basis.

4. The opinions expressed in this report are based on review of discovery documents, information gathered through examination and testing of chemical and mechanical properties of the Subject front and back steel panels, ballistic testing performed on exemplar steel panels, as well as my education, training, and experience in the fields of material science, mechanical metallurgy, and root-cause failure analysis.

5. Topographical examination of the areas near the entrance and exit points of the bullet on the Subject front panel revealed that the bullet entered through the exterior side of the front panel and exited the interior side (closest to the body) of said panel. Therefore, the Subject front panel

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC              806-368-9811                    ExpertEngineering.com

was oriented in the vest as intended, with the face designated as "Body Side" in fact being positioned closer to the body of Mr. Lynch.

6.  The steel material comprising the Subject armor panels was manufactured and marketed as being in compliance with the required MIL-DTL-46100E specifications. One of the required performance criteria to be in compliance with MIL 46100 is that all panels comply with $V_{50}$ ballistic tests, which, given the thickness of the Subject panels, are conducted at a 30° inclination angle. This angle is measured between a line along the path of the bullet and a line originating perpendicular to the face of the panel. Personal body armor, however, is not worn at a 30° angle with respect to the direction of travel of a bullet, but instead at a 0° angle (vertical orientation) in order to provide ballistic protection to vital organs against a bullet shot directly at a person. Therefore, the $V_{50}$ test certification is not applicable for certifying the necessary ballistic protection of a panel to be utilized in a personal body armor application.

7.  The US Department of Justice (DOJ), via their sub agency, the National Institute of Justice (NIJ), has created a standardized set of publicly available performance requirements and test methods to certify the ballistic protection provided by different products that are for use as personal body armor. NIJ 0101.06 has created a rating system for classifying the degree of protection a body armor system can provide, as well as detailing the testing methodology to be performed for evaluating and classifying the level of protection offered by a personal body armor panel against bullet penetration. In this instance, NIJ classification and test methods should have been utilized to evaluate the degree of ballistic protection offered by the Subject steel material when the intended use was for personal body armor.

8.  Chemical and material property tests were performed on samples removed from the Subject front and back steel panels during a joint laboratory inspection conducted on 05/24/2023. Elemental composition of the panels revealed that some of the alloying elements were above or below the allowable range to be in compliance with the MIL 46100 specification. The Brinell hardness values (BHN) for both the front and back steel panels were found to be both above and below the minimum value specified by MIL 46100.

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

9.  Two sets of chemical and mechanical property tests were performed on samples removed from the front and back Subject panels, the results of which are summarized in reports dated 5/24/2023 and 6/6/2023. However, these two independent reports publish conflicting data despite testing the same samples from the Subject panels. As such, further testing must be performed in order to establish sufficiently reliable chemical and mechanical property data.

10. A series of ballistic tests were performed to assess the ability of exemplar panels to resist penetration when shot with bullets equivalent to the incident bullet. The results of testing indicate that the as-manufactured, as-distributed, and as-sold exemplar panels failed to provide the required resistance against bullet penetration and thus the Subject panel (MIL 46100 steel) should not have been selected as a suitable material for personal body armor applications.

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

## II.     BACKGROUND

11.  On approximately October 6, 2017, Black Diamond Body Armor (hereinafter referred to as Black Diamond) purchased six sheets of ¼" x 96" x 48" MIL 46100 steel (heat # 6200582) from Leeco Steel, LLC (hereinafter referred to as Leeco).[1,2,3] Leeco sourced this material directly from the manufacturer of the steel, the Nucor Corporation (hereinafter referred to as Nucor), and subsequently shipped off the purchased steel to Arkansas Machine Works.[4,5] Arkansas Machine Works followed design drawings to cut and bend sections of the steel into panels that were subsequently used as personal body armor panels that were incorporated into bullet-resistant vests.[6] The cut and bent steel panels were subsequently coated with a spray-on material intended to contain metal fragmentation that results from bullets impacting the panels.

12. Mr. Lynch ordered a set of these panels around January 26, 2019, which were subsequently placed into the front and rear plate bags of a ballistic vest.[7] Around February 11, 2019, Mr. Lynch and others attempted to test the ballistic integrity of the vest by a test shot fired at the back panel of the vest. While standing approximately 10' away from the back panel of the vest, which was rested against a metal tank, a single shot of .223 Remington of an unknown type was fired from a 23" Braztech (a.k.a. Taurus a.k.a. Rossi) Wizard rifle (hereinafter referred to as the Subject Rifle).[8,9,10,11] The bullet impacted near the upper left shoulder area of the back panel but did not penetrate it.

---

[1] LEECO000051 – Invoice
[2] LEECO 000058 – Bill of Lading
[3] LEECO000062 – Inventory Control
[4] LEECO000051 – Invoice
[5] LEECO000056 – Nucor MIL Test Report
[6] AMW 00319 – Design Drawings
[7] Complaint and Jury Demand - para. 37
[8] Complaint and Jury Demand - para.38
[9] Video of Incident
[10] Police Image 88, 90
[11] Police Report – p. 6, 42

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

13. Having observed the back panel successfully stop the penetration of the bullet fired at close range, Mr. Lynch, in cooperation with another person, proceeded to test the front panel. This second person shot at the front panel while it was being worn by Mr. Lynch. According to the police report, the incident bullet in this case was a Federal 55-grain Full Metal Jacket (FMJ) .223 Remington cartridge. When testing the ballistic integrity of the Subject front panel, an individual standing approximately 12 – 13' away fired a shot (from the same Subject rifle) towards the front of the vest while it was being worn by Mr. Lynch.[12] Upon firing this second shot, the bullet fully pierced the front panel, striking Mr. Lynch and resulting in his fatal injuries.[13]

## III.    ASSIGNMENT AND SCOPE OF WORK

14. RWFE received an assignment from Matthew Marzak (Maverick Ray & Associates) in March of 2023 to perform a forensic engineering investigation into the most significant factor(s) contributing to the failure of the front steel panel to resist through-thickness penetration of the fired bullet. Specifically, it was sought to determine whether manufacturing-related material property deficiencies, the type of bullet / rifle that was used, or improper material selection, or some combination of these parameters contributed to this incident on a more-likely-than-not basis with the following scope of work:

  a.  To review the relevant discovery documents as listed in **Appendix A** of this report,

  b.  To evaluate the material properties of the Subject front and back armor panels,

  c.  To perform ballistic testing on exemplar armor panels, and

  d.  To determine, within a reasonable degree of engineering and scientific probability, the most significant factor(s) contributing to the failure of the Subject front panel.

---

[12] Police Report – p. 9, 31
[13] Police Report – p. 31

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

## IV.    STATEMENT OF QUALIFICATIONS RELATED TO SCOPE OF WORK

15. My academic qualifications include bachelor, master, and doctoral degrees in Mechanical Engineering (LSU), as well as a master's degree in business administration (Texas Tech). My areas of expertise within mechanical engineering that are pertinent to this case include materials science, mechanical metallurgy, design, safety engineering, forensic engineering, manufacturing and root-cause failure analysis. I am a registered professional engineer (State of Texas and have been involved in mechanical engineering and related work for the past 39 years in various capacities including industry, national R&D laboratories, national research foundations, and academia.

16. For the past 35+ years (since 1988), I have maintained continuous employment as a tenured professor at the department of Mechanical Engineering at Texas Tech University where I have taught 25 different courses at the graduate and undergraduate levels including, but not limited to, mechanical metallurgy, material science, rigid body kinetics/kinematics, safety engineering, design, and fracture/failure analysis. I am the original founder and current director of post-graduate Applied Forensic Engineering (APFE) program at Texas Tech's Whitacre College of Engineering. As part of this program and over the last 20+ years, I have developed and currently teach three (3) separate graduate level courses, focusing on 1) "Safety Engineering", 2) "Failure Analysis Techniques in Forensic Engineering", and 3) "Legal Principles in Forensic Engineering". The subject matters covered in these classes include, but are not limited to, safety engineering issues, applications of codes and standards, accident reconstruction, failure analysis techniques, forensic engineering techniques/methodology, warning systems, engineering ethics, legal responsibilities, and standards of care. I am also the director of the Materials Performance and Failure Analysis Laboratory at the Mechanical Engineering Department at Texas Tech University where I have served as the Principal and/or Co-Principal Investigator of more than $7.4 million in research grants sponsored by various industries, government agencies, national funding agencies, and national research laboratories. As a senior member of the National Academy of Forensic Engineers (NAFE), Dr. Rasty bears the designation of Diplomat Forensic Engineer (DFE) and Board-Certified Forensic Engineer from NAFE organization.

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC            806-368-9811                    ExpertEngineering.com

17. Over the past 31+ years, I have also served as the president and CEO of Real-World Forensic Engineering (RWFE), LLC, which is a boutique-style consulting firm specializing in engineering consulting, accident investigation/reconstruction, forensic engineering, and root-cause failure analysis. In this capacity, I have been involved in 1200+ engineering consulting and research projects in the above-mentioned areas. Several of my previous cases have included evaluation of high-speed impact mechanics of explosively-driven projectiles and their interaction with various targets. I have testified both in state and federal courts, as well as in depositions on behalf of both plaintiffs (60%) and defendants (40%).

18. Having knowledge of the facts in this case through the review of case documents listed in this report, research, analysis, and based on my education, training, and aforementioned experience, I am qualified to render expert opinions in this case. I am compensated for the time I have spent on this project at the rate specified at the time of my retention.

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

## V.    INFORMATION CONSIDERED

19. Documents and information that were provided to me by counsel for the Plaintiff and that I have considered and relied upon, at least in part, in arriving at the conclusions in this report are listed in **Appendix A**. To the extent I am made aware of additional information prior to my deposition, any hearing at which I may testify, or trial, I reserve the right to supplement the statements, conclusions and opinions set forth in this report to address such information.

20. If I am requested to testify at deposition, hearing or at trial in this case, I would expect to refer to the documents and information that I have considered in preparing this report as well as any documents produced by the parties in this case or exhibits presented by the parties (including demonstratives).

## VI.    BASIS OF OPINIONS

21. All opinions stated in this report are within a reasonable degree of engineering and scientific probability, and are based on the following:

   a.   My education and experience as discussed in Section IV of this report,

   b.   Review of relevant discovery documents provided to RWFE and listed in **Appendix A**,

   c.   Review of relevant industry standards and best practices as listed in **Appendix A** of this report,

   d.   My inspection of the Subject front and back armor panels performed on May 24, 2023, and

   e.   Testing of Subject and exemplar panels, as well as industry-certified armor panels.

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

# VII.    ANALYSIS AND OBSERVATIONS

## MUZZLE VELOCITY & BARREL LENGTH

22. The velocity of a projectile as propelled out of the muzzle is referred to as "muzzle velocity". The muzzle velocity is a function of the length of the barrel, as a longer barrel allows for a greater amount of time for the explosive pressure to drive the bullet, hence increasing the average muzzle velocity when the barrel length is increased. A second factor affecting the muzzle velocity is the weight of the projectile. An equal amount of gunpowder will propel a lighter bullet to a faster ultimate velocity than a heavier bullet, all other things being equal.

23. According to the police report, the Subject bullet was a .223 Remington caliber weighing 55 grains (3.564 grams). As such, the Subject rifle must have had a 23" barrel length because the only Rossi Wizard manufactured rifle that is compatible with the .223 Remington caliber comes in a 23" barrel length.

## REQUIRED PERFORMANCE SPECIFICATIONS

24. The Subject armor panels were intended to be in accordance with MIL-DTL-46100E entitled: *"Detail Specification - Armor Plate, Steel, Wrought, High Hardness."* This standard is utilized for all quenched and tempered high hardness wrought steel armor for lightweight applications of thicknesses between 0.118 inches (3mm) to 2 inches (50.8mm).[14] This MIL standard sets out a variety of requirements for the steel to be produced in accordance with, including, but not limited to, dimensions, tolerances, chemical makeup, material properties, and ballistic performance.

25. MIL 46100 specifies that all panels comply with $V_{50}$ ballistic tests, which is defined in MIL 46100 §A.2.6 as the average of 6 impact velocities comprised of the three lowest velocities resulting in complete penetration and the three highest velocities resulting in partial penetration.

---

[14] MIL-DTL-46100E §1.1 Scope

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

As specified, the average velocity of these 6 shots must be greater than or equal to a minimum velocity requirement for a given panel thickness. MIL 46100 §A.4.1 further outlines that the "$V_{50}$ ballistic tests shall be performed in accordance with USADTC TOP 2-2-710, '*Ballistic Tests of Armor Materials*' or ITOP 2-2-713, '*Ballistic Testing of Armor*'" requirements, as outlined in Tables A-I through A-V, to be in compliance.  According to Table V of MIL 46100 – "*Thickness ranges and corresponding test projectiles for first article testing*", a sample between 0.118 and 0.300 inches thick is required to comply with Table A-I specifications, which requires a test projectile of Cal. 30 AP, M2 at an obliquity angle of 30°. Accordingly, given the Subject thickness of 0.250 inches, Table A-I sets out a required ballistic limit of at least 2232 feet per second (fps) to be sufficiently ballistically resistant and in compliance with MIL 46100.

26. The Department of the Army Ballistic Test Certification (LEECO000065) is a document which states the results of ballistic testing performed on a sample from the same heat (lot) that the Subject plate was represented to be manufactured in (heat no. 6200582). This sample was found to be complaint with the $V_{50}$ ballistic limit testing when fired upon with a Cal .30 Ap, M2 bullet at 2441 fps and 30 degrees obliquity in September of 2016.

27. It is this ballistic certification that is believed to be represented by Leeco as the validation that the Subject steel panel was sufficiently strong for selection as a suitable material for body armor applications. However, it is very important to note that the $V_{50}$ test certification only qualifies a material for applications where the panels are subject to bullet impacts at 30° obliquity, while in a body armor application where a bullet impacts the panel at 0° obliquity, the use of $V_{50}$ test certification is grossly invalid for body armor applications.

28. This decrease from 30° to 0° angle of incidence (a.k.a. obliquity angle) as shown in *Figure 1* below, results in an increase to the kinetic (impact) energy delivered into the armor panel as a bullet impacting the panel with a 0° angle of incidence is on a trajectory that is entirely perpendicular to the face of the panel, therefore delivering 100% of its kinetic (impact) energy onto the panel, while a bullet impacting the panel with a 30° angle of incidence is on a trajectory that is entirely perpendicular to the face of the panel, only delivers a portion (~75%) of its kinetic (impact) energy onto the panel.

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com



**Figure 1: Angle of Incidence[15]**

29. Due to above-stated factors, the $V_{50}$ test certification was not appropriate for validating the ballistic resistivity of the Subject steel panels in a personal body armor application. However, standards that do validate the ballistic resistance of personal body armor panels are readily available and should have been alternatively utilized to select the appropriate material type/thickness for personal body armor applications.

30. The US Department of Justice (DOJ), via their sub agency, the National Institute of Justice (NIJ), has created a standardized set of performance requirements and test methods to validate the ballistic resistivity of different products that are for use as personal body armor. Since 1972, the NIJ has been publishing standards for personal body armor and currently publishes the *Ballistic Resistance of Body Armor NIJ Standard – 0101.06* in conjunction with the Office of Law Enforcement Standards (OLES) of the National Institute of Standards and Technology (NIST).[16,17] NIJ 0101.06 has created a rating system for classifying the degree of protection a tested body armor system can provide, as well as detailing the testing methodology to be performed for evaluating the level of protection offered by a personal body armor panel against bullet penetration.

31. The NIJ has created a series of 5 progressively increasing levels of penetration resistance (types IIA - IV) that can be used to designate the highest level of ballistic resistance offered by a panel as shown in *Table 1* below.

---

[15] NIJ 0101.06 Figure 1. Angle of incidence
[16] "Body Armor Performance Standards." National Institute of Justice (NIJ), 22 Feb. 2018, nij.ojp.gov/topics/articles/body-armor-performance-standards.
[17] NIJ 0101.06

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

32. Since NIJ body armor classification, which is available for free to the public, relies on 0° angle of incidence between the bullet and the impacted panel, it is the most appropriate criteria for selection of panels that are suitable for use in personal body armor applications.

**Table 1 - NIJ Body Armor Classification[18]**

| NIJ Type | | Test Projectile | | |
|---|---|---|---|---|
| | | Bullet | Grain | Velocity |
| **H A N D G U N** | Type IIA | 9 mm FMJ RN | 124 gr (8.0g) | 373 m/s ± 9.1 m/s |
| | | .40 S&W FMJ | 180 gr (11.7g) | 352 m/s ±9.1 m/s |
| | Type II | 9 mm FMJ RN | 124 gr (8.0g) | 398 m/s ± 9.1 m/s |
| | | .357 Magnum JSP | 158 gr (10.2g) | 436 m/s ± 9.1 m/s |
| | Type IIIA | .357 SIG FMJ FN | 125 gr (8.1g) | 448 m/s ± 9.1 m/s |
| | | .44 Magnum SJHP | 240 gr (15.6 g) | 436 m/s ± 9.1 m/s |
| **R I F L E** | Type III | 7.62mm FMJ (M80) | 147 gr (9.6g) | 847 m/s ± 9.1 m/s |
| | Type IV | .30 Cal AP (M2) | 166 gr (10.8g) | 878 m/s ± 9.1 m/s |

## LABORATORY TESTING

33. Chemical and material property testing was performed on the front and back Subject panels during a joint laboratory inspection that I attended on 05/24/2023. Test results listed below are compared with the required values set forth in MIL 46100 with any failing measurements annotated in bolded text.

---

[18] NIJ 0101.06 §2.1-2.5 (Energy column was added based on kinetic energy calcualtions)

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 2: "Front Panel 2" Chemical Composition and Comparison with MIL 46100 (per Stress Engineering report) [19]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---|---|---|---|---|
| | | Maximum Limit | Allowable Range | |
| C | 0.303 | 0.32 | +0, - 0.05 | Pass |
| Mn | 0.891 | None Required, however if: | | Pass |
| | | ≤ 1.00 | ± 0.15 | |
| | | > 1.00 | ±0.20 | |
| P | 0.0104 | 0.020 | | Pass |
| S | <0.0001 | 0.010 | | Pass |
| **Si** | **0.471** | **None Required, however if:** | | **Fail** |
| | | **≤ 0.60** | **±0.10** | |
| | | **> 0.60 to ≤1.00** | **±0.15** | |
| | | **> 1.00** | **±0.20** | |
| **Ni** | **0.388** | **None Required** | **±0.25** | **Fail** |
| **Cr** | **0.530** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.25** | **±0.15** | |
| | | **> 1.25** | **±0.25** | |
| Mo | 0.217 | None Required, however if: | | Pass |
| | | ≤ 0.20 | ±0.035 | |
| | | > 0.20 | ±0.075 | |
| V | 0.0067 | None Required | ±0.075 | Pass |
| **B** | **0.0031** | **0.003** | | **Fail** |
| Cu | 0.190 | 0.25 | | Pass |
| N | N/A | 0.03 | | Pass |
| Ti | 0.0435 | 0.10 | | Pass |
| Zr | < 0.0020 | 0.10 | | Pass |
| Al | 0.0361 | 0.10 | | Pass |
| Pb | 0.0048 | 0.10 | | Pass |
| Sn | 0.0084 | 0.02 | | Pass |
| Sb | < 0.0040 | 0.02 | | Pass |
| As | 0.0028 | 0.02 | | Pass |
| **Se** | **< 0.0040** | **Not Present in MIL std** | | **Und** |
| **Bi** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **Zn** | **0.0029** | **Not Present in MIL std** | | **Und** |
| **Ca** | **0.0023** | **Not Present in MIL std** | | **Und** |
| **W** | **0.0088** | **Not Present in MIL std** | | **Und** |
| **Nb** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **Co** | **0.0078** | **Not Present in MIL std** | | **Und** |

---

[19] Stress Engineering OES Chemical Analysis Results – 5/24/2023

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 3: "Front Panel" Chemical Composition and Comparison with MIL 46100 (per Stress Engineering report) [20]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---------|---------------|----------------|-----------------|-------------|
| | | Maximum Limit | Allowable Range | |
| **C** | **0.394** | **0.32** | **+0, - 0.05** | **Fail** |
| Mn | 0.870 | None Required, however if:<br>≤ 1.00<br>> 1.00 | ± 0.15<br>±0.20 | Pass |
| P | 0.0102 | 0.020 | | Pass |
| S | 0.0003 | 0.010 | | Pass |
| **Si** | **0.464** | **None Required, however if:<br>≤ 0.60<br>> 0.60 to ≤1.00<br>> 1.00** | **±0.10<br>±0.15<br>±0.20** | **Fail** |
| **Ni** | **0.382** | **None Required** | **±0.25** | **Fail** |
| **Cr** | **0.519** | **None Required, however if:<br>≤ 1.25<br>> 1.25** | **±0.15<br>±0.25** | **Fail** |
| Mo | 0.210 | None Required, however if:<br>≤ 0.20<br>> 0.20 | ±0.035<br>±0.075 | Pass |
| V | 0.0066 | None Required | ±0.075 | Pass |
| B | 0.0025 | 0.003 | | Pass |
| Cu | 0.187 | 0.25 | | Pass |
| N | N/A | 0.03 | | Pass |
| Ti | 0.0458 | 0.10 | | Pass |
| Zr | < 0.0020 | 0.10 | | Pass |
| Al | 0.0355 | 0.10 | | Pass |
| Pb | 0.0039 | 0.10 | | Pass |
| Sn | 0.0078 | 0.02 | | Pass |
| Sb | < 0.0050 | 0.02 | | Pass |
| As | < 0.0020 | 0.02 | | Pass |
| **Co** | **0.0077** | **Not Present in MIL std** | | **Und** |
| **Nb** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **W** | **0.0067** | **Not Present in MIL std** | | **Und** |
| **Ca** | **0.0024** | **Not Present in MIL std** | | **Und** |
| **Zn** | **0.0029** | **Not Present in MIL std** | | **Und** |
| **Bi** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **Se** | **< 0.0040** | **Not Present in MIL std** | | **Und** |

---

[20] Stress Engineering OES Chemical Analysis Results – 5/24/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 4: "Back Panel 2" Chemical Composition and Comparison with MIL 46100 (per Stress Engineering report) [21]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---|---|---|---|---|
| | | Maximum Limit | Allowable Range | |
| **C** | **0.336** | **0.32** | **+0, - 0.05** | **Fail** |
| **Mn** | **1.24** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.00** | **± 0.15** | |
| | | **> 1.00** | **±0.20** | |
| P | 0.0130 | 0.020 | | Pass |
| S | < 0.0001 | 0.010 | | |
| **Si** | **0.255** | **None Required, however if:** | | **Fail** |
| | | **≤ 0.60** | **±0.10** | |
| | | **> 0.60 to ≤1.00** | **±0.15** | |
| | | **> 1.00** | **±0.20** | |
| Ni | 0.0156 | None Required | ±0.25 | Pass |
| **Cr** | **0.628** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.25** | **±0.15** | |
| | | **> 1.25** | **±0.25** | |
| Mo | 0.221 | None Required, however if: | | Pass |
| | | ≤ 0.20 | ±0.035 | |
| | | > 0.20 | ±0.075 | |
| V | 0.0093 | None Required | ±0.075 | Pass |
| B | 0.0018 | 0.003 | | Pass |
| Cu | 0.0302 | 0.25 | | Pass |
| N | N/A | 0.03 | | Pass |
| Ti | 0.0271 | 0.10 | | Pass |
| Zr | < 0.0020 | 0.10 | | Pass |
| Al | 0.0423 | 0.10 | | Pass |
| Pb | 0.0054 | 0.10 | | Pass |
| Sn | 0.0025 | 0.02 | | Pass |
| Sb | < 0.0050 | 0.02 | | Pass |
| As | < 0.0020 | 0.02 | | Pass |
| **Co** | **0.0033** | **Not Present in MIL std** | | **Und** |
| **Nb** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **W** | **< 0.0050** | **Not Present in MIL std** | | **Und** |
| **Ca** | **0.0021** | **Not Present in MIL std** | | **Und** |
| **Zn** | **0.0031** | **Not Present in MIL std** | | **Und** |
| **Bi** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **Se** | **< 0.0040** | **Not Present in MIL std** | | **Und** |

---

[21] Stress Engineering OES Chemical Analysis Results – 5/24/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 5: "Back Panel" Chemical Composition and Comparison with MIL 46100 (per Stress Engineering report) [22]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---------|---------------|----------------|---------------|------|
| | | Maximum Limit | Allowable Range | |
| **C** | **0.355** | **0.32** | **+0, – 0.05** | **Fail** |
| **Mn** | **1.23** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.00** | **± 0.15** | |
| | | **> 1.00** | **±0.20** | |
| P | 0.0136 | 0.020 | | Pass |
| S | 0.0001 | 0.010 | | Pass |
| **Si** | **0.251** | **None Required, however if:** | | **Fail** |
| | | **≤ 0.60** | **±0.10** | |
| | | **> 0.60 to ≤1.00** | **±0.15** | |
| | | **> 1.00** | **±0.20** | |
| Ni | 0.0151 | None Required | ±0.25 | Pass |
| **Cr** | **0.621** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.25** | **±0.15** | |
| | | **> 1.25** | **±0.25** | |
| Mo | 0.220 | None Required, however if: | | Pass |
| | | ≤ 0.20 | ±0.035 | |
| | | > 0.20 | ±0.075 | |
| V | 0.0092 | None Required | ±0.075 | Pass |
| B | 0.0012 | 0.003 | | Pass |
| Cu | 0.0301 | 0.25 | | Pass |
| N | N/A | 0.03 | | Pass |
| Ti | 0.0272 | 0.10 | | Pass |
| Zr | < 0.0020 | 0.10 | | Pass |
| Al | 0.0408 | 0.10 | | Pass |
| Pb | 0.0055 | 0.10 | | Pass |
| Sn | 0.0026 | 0.02 | | Pass |
| Sb | < 0.0050 | 0.02 | | Pass |
| As | < 0.0020 | 0.02 | | Pass |
| **Co** | **0.0034** | **Not Present in MIL std** | | **Und** |
| **Nb** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **W** | **< 0.0050** | **Not Present in MIL std** | | **Und** |
| **Ca** | **0.0015** | **Not Present in MIL std** | | **Und** |
| **Zn** | **0.0032** | **Not Present in MIL std** | | **Und** |
| **Bi** | **< 0.0010** | **Not Present in MIL std** | | **Und** |
| **Se** | **< 0.0040** | **Not Present in MIL std** | | **Und** |

---

[22] Stress Engineering OES Chemical Analysis Results – 5/24/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 6 : Front Panel Chemical Composition and Comparison with MIL 46100 (per A and M report) [23]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---------|---------------|----------------|----------------|-------------|
| | | Maximum Limit | Allowable Range | |
| **C** | **0.25** | **0.32** | **+0, - 0.05** | **Fail** |
| **Mn** | **0.88** | None Required, however if: ≤ 1.00 **> 1.00** | ± 0.15 **±0.20** | **Fail** |
| P | 0.008 | 0.020 | | Pass |
| S | 0.002 | 0.010 | | Pass |
| **Si** | **0.44** | **None Required, however if: ≤ 0.60 > 0.60 to ≤1.00 > 1.00** | **±0.10 ±0.15 ±0.20** | **Fail** |
| **Ni** | **0.41** | **None Required** | **±0.25** | **Fail** |
| **Cr** | **0.52** | **None Required, however if: ≤ 1.25 > 1.25** | **±0.15 ±0.25** | **Fail** |
| Mo | 0.21 | None Required, however if: ≤ 0.20 > 0.20 | ±0.035 ±0.075 | Pass |
| V | 0.005 | None Required | ±0.075 | Pass |
| B | 0.0019 | 0.003 | | Pass |
| Cu | 0.17 | 0.25 | | Pass |
| **N** | **N/A** | **0.03** | | **Fail** |
| Ti | 0.042 | 0.10 | | Pass |
| Zr | < 0.01 | 0.10 | | Pass |
| Al | 0.038 | 0.10 | | Pass |
| **Pb** | **N/A** | **0.10** | | **Fail** |
| Sn | 0.008 | 0.02 | | Pass |
| **Sb** | **N/A** | **0.02** | | **Fail** |
| **As** | **N/A** | **0.02** | | **Fail** |
| **Co** | **0.0034** | **Not Present in MIL std** | | **Und** |
| **Nb** | **< 0.002** | **Not Present in MIL std** | | **Und** |
| **W** | **< 0.01** | **Not Present in MIL std** | | **Und** |

---

[23] A and M Technical Services Report No 23-1547 – 6/6/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 7: Back Plate Chemical Composition and Comparison with MIL 46100 (per A and M report) [24]**

| Element | Panel Results | MIL 46100 Std. | | Pass / Fail |
|---|---|---|---|---|
| | | Maximum Limit | Allowable Range | |
| C | 0.31 | 0.32 | +0, - 0.05 | Pass |
| **Mn** | **1.25** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.00** | **± 0.15** | |
| | | **> 1.00** | **±0.20** | |
| P | 0.012 | 0.020 | | Pass |
| S | <0.002 | 0.010 | | Pass |
| **Si** | **0.25** | **None Required, however if:** | | **Fail** |
| | | **≤ 0.60** | **±0.10** | |
| | | **> 0.60 to ≤1.00** | **±0.15** | |
| | | **> 1.00** | **±0.20** | |
| Ni | 0.03 | None Required | ±0.25 | Pass |
| **Cr** | **0.62** | **None Required, however if:** | | **Fail** |
| | | **≤ 1.25** | **±0.15** | |
| | | **> 1.25** | **±0.25** | |
| Mo | 0.23 | None Required, however if: | | Pass |
| | | ≤ 0.20 | ±0.035 | |
| | | > 0.20 | ±0.075 | |
| V | 0.009 | None Required | ±0.075 | Pass |
| B | 0.0015 | 0.003 | | Pass |
| Cu | 0.03 | 0.25 | | Pass |
| **N** | **N/A** | **0.03** | | **Fail** |
| Ti | 0.027 | 0.10 | | Pass |
| Zr | < 0.01 | 0.10 | | Pass |
| Al | 0.043 | 0.10 | | Pass |
| **Pb** | **N/A** | **0.10** | | **Fail** |
| Sn | 0.005 | 0.02 | | Pass |
| **Sb** | **N/A** | **0.02** | | **Fail** |
| **As** | **N/A** | **0.02** | | **Fail** |
| **Co** | **< 0.005** | Not Present in MIL std | | **Und** |
| **Nb** | **< 0.002** | Not Present in MIL std | | **Und** |
| **W** | **< 0.01** | Not Present in MIL std | | **Und** |

---

[24] A and M Technical Services Report No 23-1547 – 6/6/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**Table 8: Brinell Hardness Values (HB) of Subject Panels [25, 26]**

| Panel | Hardness Value | MIL 46100 Std. | Pass / Fail |
|---|---|---|---|
| Front | 477   (Stress Engr.) | 477 - 534 | Pass |
|  | **468**  (A and M) |  | **Fail** |
|  | **468**  (A and M) |  | **Fail** |
| Back | 481   (Stress Engr.) | 477 - 534 | Pass |
|  | **468**  (A and M) |  | **Fail** |
|  | **468**  (A and M) |  | **Fail** |

34. The Subject front and back panel were both found to be deficient in a number of chemical and material property requirements, and as such, do not meet the complete list of necessary specifications for classification as MIL 46100 steel.

35. A number of mechanical and chemical tests were performed on samples from the front and back Subject panels. The results of said tests were provided in both preliminary (5/24/2023) and supplemental (6/6/2023) reports from Stress Engineering. However, there appears to be a level of inconsistency in the test data that can result in contradictory conclusions.

a. For example, in the 5/24/2023 Stress Engineering Report, the Brinell Hardness Values are reported as 477 for the front panel, and 481 for the back panel which appears to be just in compliance with the required range of hardness per MIL 46100 (477-534 BHN). However, in the 6/6/2023 Stress Engineering Report, the Brinell Hardness Values are reported as 468 & 468 for the front panel, and 468 & 468 for the back panel, which would indicate that the hardness of the Subject panels is in fact out of compliance with MIL 46100 specifications.

---

[25] Stress Engineering OES Chemical Analysis Results – 5/24/2023
[26] A and M Technical Services Report No 23-1547 – 6/6/2023

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

      b.   Additionally, in the 5/24/2023 Stress Engineering Report, the Carbon content is reported as 0.303 & 0.394 for the front panel, and 0.336 & 0.355 for the back panel which has both passing and failing components of the required range of carbon content per MIL 46100 (0.27 – 0.32). However, in the 6/6/2023 A and M Technical Serices Report, the Carbon content is reported as 0.25 for the front panel, and 0.31 for the back panel which has both passing and failing components of the required range of carbon content per MIL 46100 (0.27 – 0.32). The 6/6/2023 report passes the back panel, while the earlier version has multiple readings that would fail this same back panel. The 6/6/2023 report also fails the front panel, while the earlier report has both passing and failing composition data.

36. As such, it appears that the results of the chemical and material property tests performed by Stress Engineering and A and M Technical Services are inconclusive at this time and further testing must be performed on the Subject panels to establish a reasonable degree of reliability of the test results.

37. Due to the inconclusive nature of the test results performed on samples removed from the Subject panels that are available to date, it cannot be established within a reasonable degree of engineering and scientific probability whether the chemistry of the Subject panels matches or does not match the reported chemistry of heat no. 6200582 as reported by Nucor in LEECO000056.

38. Furthermore, due to lack of sufficient discovery documents at this time, it cannot be established whether the MIL Test Report (LEECO000056) accurately represents the chemical composition of every plate manufactured in this heat based on potential variability in manufacturing of different plates within the same heat. Based on the above-stated reasons, additional testing and discovery is required before it can be determined, within a reasonable degree of engineering and scientific probability, whether or not the Subject panels were from heat no. 6200582.

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

**BALLISTIC TESTING**

39. MIL 46100 steel exemplar armor panels of approximately 0.25" thick were sourced to be ballistically tested in order to determine their ability to resist a similar bullet traveling at speeds similar to the Subject incident.

40. Three armor panels were tested in accordance with the following conditions. Two of these panels were exemplar MIL 46100 panels of the same thickness as the Subject front armor panel, and the final panel was made of AR550 steel acquired from Spartan Armor Systems.  This AR550 panel is certified and listed by the NIJ as being certified and independently rated as personal body armor that is capable of resisting the Subject bullet at speeds similar to the Subject incident. We also tested this AR550 panel in order to compare the ballistic resistance of the exemplar MIL 46100 panels to a panel which is certified to perform as personal body armor.

41. A wooden testing rig was created to hold each of the panels rigidly in line with the barrel of the firearm used for testing. The rig minimized the amount of energy resulting from the bullet-to-panel collision being dissipated into the environment and maximized the forces directed into the materials of the panels themselves in order to examine the resistance of the tested panel to the incoming projectile. This rig was also capable of positioning the testing panels at 0° (considering a vertical orientation to be 0° and rotating the panel horizontally towards the observer to be 90°) to test the ballistic resistance when oriented as would be the case when used as personal body armor, and at 30° to test the ballistic resistance when oriented as would be the minimum allowable angle of impact under MIL 46100. The panels were set up approximately 12 feet away from the muzzle of the firearm as described in the police report to be the approximate distance between the decedent and the rifle whereupon the fatal shot was fired.

42. Due to the incredible challenge of sourcing a rifle that had the same ballistic properties as the subject due to its unique nature, a bracket analysis was performed. Two rifles capable of firing the exemplar cartridges were selected; one that had a barrel length of 20 inches, therefore had a muzzle velocity below the Subject rifle and thus delivered less energy onto the target than the Subject rifle would have been capable of, and a second rifle that had a barrel length of 24 inches, therefore had a muzzle velocity slightly above the Subject rifle and thus delivered slightly more

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC            806-368-9811                    ExpertEngineering.com

energy onto the target than the Subject rifle would have been capable of outputting. Both rifles
were secured to a remote firing platform and held in a bench rest to remove the human element
from the accuracy of the resulting projectiles and ensure well placed impacts on the tested panels.



**Figure 2: Overview of ballistic test setup**

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com





**Figure 3: Armor panel setup (top) and incident angles tested 0° (bottom left) and 30° (bottom right)**

25 of 32

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com



**Figure 4: MIL 46100 Exemplar #1 with annotated ballistic results front (left) and back (right)**



**Figure 5: MIL 46100 Exemplar #2 with annotated ballistic results front (left) and back (right)**

26 of 32

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com



**Figure 6: Spartan Armor with annotated ballistic results front (left) and back (right)**



**Figure 7: Results of ballistic testing of Spartan Armor (left), MIL 64100 #1 (middle), and MIL 46100 #2 (right) panels**

27 of 32

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

**Table 9: Ballistic Results for MIL 46100 Exemplar #1 Panel**

| Run | Angle of Incidence (deg) | Muzzle Velocity (fps) | Result |
|-----|--------------------------|-----------------------|--------|
| 20" | 0° | 2310 | Penetration |
| 20" | 30° | 2368 | Partial Penetration |
| 24" | 30° | 2485 | Penetration |

**Table 10: Ballistic Results for MIL 46100 Exemplar #2 Panel**

| Run | Angle of Incidence (deg) | Muzzle Velocity (fps) | Result |
|-----|--------------------------|-----------------------|--------|
| 20" | 0° | 2453 | Penetration |
| 20" | 30° | 2926 | Partial Penetration |
| 24" | 30° | 3187 | Penetration |

**Table 11: Ballistic Results for Spartan Armor Panel**

| Run | Angle of Incidence (deg) | Muzzle Velocity (fps) | Result |
|-----|--------------------------|-----------------------|--------|
| 20" | 0° | 2933 | Resisted Impact |
| 24" | 0° | 2832 | Resisted Impact |

43. Both of the MIL 46100 exemplar panels were unable to resist the energy delivered from the 20" rifle when shot at 0° incidence angle even though the muzzle velocity of a 20" barrel is generally less than the muzzle velocity delivered by the Subject rifle with a 23" barrel.  When

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

oriented at an incidence angle of 30°, both MIL 46100 exemplar panels were partially penetrated by the bullet and resulted in deformation of the body worn side when fired from the less powerful 20" rifle. However, both MIL 46100 exemplar panels allowed for a clean hole to be punched through the steel and allowed for the bullet to pass through when shot with the 24" barrel. In contrast to the results of the MIL 46100 exemplar panels, the Spartan Armor panel absorbed the bullets from both the 20" and 24" rifle at 0° angle of incidence without any deformation of the back side of the panel.



**Figure 8: Diagram of bullet entry showing exit hole (top left) entry hole (top right) and sectioned view (bottom) and direction of bullet travel (red arrow)**

44. As shown in the right image of *Figure 8*, the direction of bullet travel can be conclusively established to be from right to left (from the exterior of the panel to the interior of the panel). This is due to the fact that the bullet hole volume is expanding from right to left, as well as witness marks that establish plastic flow of material from right to left in the right image of *Figure 8*. As such, it can be established that the bullet entered through the exterior side of the front panel and exited the interior side (worn in the Subject incident closest to the body) of said panel. Therefore, the Subject front panel was oriented in the vest as intended, with the face designated as "Body Side" in fact being positioned closer to the body of Mr. Lynch.

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

**C**ONCLUSIONS **AND** **O**PINIONS

45. Topographical examination of the areas near the entrance and exit points of the bullet on the Subject front panel revealed that the bullet entered through the exterior side of the front panel and exited the interior side (closest to the body) of said panel. Therefore, the Subject front panel was oriented in the vest as intended, with the face designated as "Body Side" in fact being positioned closer to the body of Mr. Lynch.

46. The steel material comprising the Subject armor panels was manufactured and marketed as being in compliance with the required MIL-DTL-46100E specifications. One of the required performance criteria to be in compliance with MIL 46100 is that all panels comply with $V_{50}$ ballistic tests, which, given the thickness of the Subject panels, are conducted at a 30° inclination angle. This angle is measured between a line along the path of the bullet and a line originating perpendicular to the face of the panel. Personal body armor, however, is not worn at a 30° angle with respect to the direction of travel of a bullet, but instead at a 0° angle (vertical orientation) in order to provide ballistic protection to vital organs against a bullet shot directly at a person. Therefore, the $V_{50}$ test certification is not applicable for certifying the necessary ballistic protection of a panel to be utilized in a personal body armor application.

47. The US Department of Justice (DOJ), via their sub agency, the National Institute of Justice (NIJ), has created a standardized set of publicly available performance requirements and test methods to certify the ballistic protection provided by different products that are for use as personal body armor. NIJ 0101.06 has created a rating system for classifying the degree of protection a body armor system can provide, as well as detailing the testing methodology to be performed for evaluating and classifying the level of protection offered by a personal body armor panel against bullet penetration. In this instance, NIJ classification and test methods should have been utilized to evaluate the degree of ballistic protection offered by the Subject steel material when the intended use was for personal body armor.

48. Chemical and material property tests were performed on samples removed from the Subject front and back steel panels during a joint laboratory inspection conducted on 05/24/2023. Elemental composition of the panels revealed that some of the alloying elements were above or

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811          ExpertEngineering.com

below the allowable range to be in compliance with the MIL 46100 specification. The Brinell hardness values (BHN) for both the front and back steel panels were found to be both above and below the minimum value specified by MIL 46100.

49. Two sets of chemical and mechanical property tests were performed on samples removed from the front and back Subject panels, the results of which are summarized in reports dated 5/24/2023 and 6/6/2023. However, these two independent reports publish conflicting data despite testing the same samples from the Subject panels. As such, further testing must be performed in order to establish sufficiently reliable chemical and mechanical property data.

50. A series of ballistic tests were performed to assess the ability of exemplar panels to resist penetration when shot with bullets equivalent to the incident bullet. The results of testing indicate that the as-manufactured, as-distributed, and as-sold exemplar panels failed to provide the required resistance against bullet penetration and thus the Subject panel (MIL 46100 steel) should not have been selected as a suitable material for personal body armor applications.

51. All opinions stated above are reached based on the analysis of information available to date, and within a reasonable degree of engineering and scientific probability.

RE:  *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

Real-World Forensic Engineering, LLC          806-368-9811                    ExpertEngineering.com

## VIII.    DISCLAIMER

52. The opinions stated in this letter are based on review of available information to this date. I reserve the right to expand upon or to revise the aforementioned opinions, as more information is made available to me through discovery, research, inspection, and/or testing.

Submitted by:

Professor Jahan Rasty, PhD, PE, DFE, CFEI, CFII
President and CEO

—END OF REPORT—

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

*Real-World Forensic Engineering, LLC*          806-368-9811                    ExpertEngineering.com

# **Appendix A**

## Documents List

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*

*Real-World Forensic Engineering, LLC*          806-368-9811          ExpertEngineering.com

## Provided Documents

1. A and M Technical Services Lab Report (6/6/2023)
2. Amended Complaint in O'Neal Steel, Inc, et al. v Worldwide Steel Unlimited, Inc., et al.
3. AMW 000319
4. Complaint and Jury Demand
5. Executed Rule 11 Agreement signed by James Jim Tames on November 20, 2020
6. Graham County Sherriff's Office – Officer Report
7. James Jim Tames' Answers to Plaintiff James Lynch's First Set of Interrogatories
8. James Jim Tames' Responses to Plaintiff James Lynch's First Requests for Production
9. JJT 000001-000003
10. LEECO 000051-000065
11. LEECO 000115-000123
12. Photograph of the Subject Plate (IMG_1547.jpg)
13. Photograph of the Subject Plate (IMG_4775.jpg)
14. Police Photographs taken February 11, 2019
15. Proposed Testing Protocol Prepared by Exponent
16. Stress Engineering Services Lab File
17. Video of Incident Shot
18. Video of Test Shot

## RWFE Research & Standards

1. "Body Armor Performance Standards." *National Institute of Justice (NIJ)*, 22 Feb. 2018, nij.ojp.gov/topics/articles/body-armor-performance-standards.
2. MIL-DTL-46100E, "Detail Specification - Armor Plate, Steel, Wrought, High Hardness"
3. National Institute of Justice (NIJ) Standard 0101.06, "Ballistic Resistance of Body Armor"

**—END OF APPENDIX A—**

RE: *James Lynch et. al. vs. Black Diamond Body Armor et. al.*