IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES LYNCH and SHARON LYNCH,
Individually and on behalf of PARKER LYNCH
AND HIS ESTATE                                                    PLAINTIFFS

V.                              CASE NO. 5:23-CV-5015

LEECO STEEL, LLC;
D&F EQUIPMENT SALES, INC; and
ARKANSAS MACHINE WORKS, INC.                           DEFENDANTS

<u>MEMORANDUM ORDER AND OPINION</u>

Currently before the Court is Defendants Arkansas Machine Works, Inc. ("AMW")

and D&F Equipment Sales, Inc.'s ("D&F" or, collectively, "AMW and D&F") Motion for

Summary Judgment (Doc. 161), Memorandum Brief (Doc. 162), and Statement of

Undisputed Facts (Doc. 163), filed on October 16, 2023; Plaintiffs James and Sharon

Lynch's Response in Opposition (Doc. 169), Memorandum Brief (Doc. 170), and

Statement of Disputed Facts (Doc. 176); and AMW and D&F's Reply (Doc. 178). The

Motion became fully briefed and ripe for review on November 6, 2023. Upon

consideration, AMW and D&F's Motion (Doc. 161) is **GRANTED**.

## I.   BACKGROUND

### A.   FACTUAL HISTORY

This case originates from an incident on February 11, 2019, when Parker Lynch

was killed after a bullet shot by one of his friends penetrated body armor that Parker was

wearing. (Doc. 140, ¶¶ 22–23).[1] Parker had bought this body armor from Black Diamond

---

[1] Unless otherwise noted, all facts stated in this section are undisputed between Separate
Defendants and Plaintiffs, as indicated by their statements of facts and briefing.

Body Armor ("Black Diamond"). (Doc. 163, ¶ 4). Upon receiving the body armor, Parker and his friends decided to test the vest by firing a rifle at it. *Id.* at ¶ 2. The group first fired a "test shot" at the back plate of the vest. Doc. 170, p. 9; *see also* Doc. 162, p. 13. This first shot did not perforate the vest. *Id.* Parker then put the body armor vest on and told his friend to fire directly at him. (Doc. 163, ¶¶ 2–3). The friend fired a .223 Full Metal Jacket bullet directly at the front plate of the body armor from a distance of approximately 10 feet. *Id.* The bullet penetrated the front plate of the body armor, entered Parker's abdomen, and ultimately killed him. *Id.* at ¶ 1. Plaintiffs are James and Sharon Lynch, Parker's parents and the administrators of his estate. They assert that Parker's death was caused by a defect in the Black Diamond body armor and, specifically, the steel plate inserts that were cut and bent by AMW and D&F.

On or around October 2017, Black Diamond purchased certified MIL-DTL-46100E ("MIL-46100")[2] steel from Leeco, a steel distributor that acts as the middleman between steel manufacturers and consumers and another defendant in this case. *See* Doc. 140, ¶ 14. James Tames is the sole owner and operator of Black Diamond, which he runs out of his home. Mr. Tames designs body armor, sources materials, assembles the armor, and sells it at gun shows, online, and over the phone. He develops the bases for his designs and sourcing from his personal research of other body armor companies, though he has no formal education or experience in the design or assembly of body armor or its materials. Through his research, Mr. Tames identified Leeco Steel as a potential

---

[2] In certain briefings quoted by the Court, the parties refer to this as MIL-A-46100 steel. Based on the docket and record as a whole, it appears this is being used synonymously with MIL-DTL-46100 steel. Thus, the Court will not address any discrepancies, and will refer to the steel at issue as MIL-46100 for shorthand.

distributor he would like to buy from. While it is disputed how he came to the decision to buy MIL-46100 steel, it is undisputed that he ultimately purchased MIL-46100 from Leeco.

Black Diamond hired AMW and D&F to cut and bend the already-purchased sheets of MIL-46100 steel into the shape of body armor panels. (Doc. 163, ¶¶ 10–12). After Mr. Tames purchased the steel from Leeco, Leeco delivered the steel to AMW and D&F, where they cut and bent the steel into the shape of body armor panels according to Black Diamond's specifications. Then, Mr. Tames picked up the steel and took it back to his home. In the course of assembly, Mr. Tames would label each panel of Black Diamond armor. The relevant label here included the manufacturing date of 01/2018, which Mr. Tames states constitutes the date it was cut by AMW, and lists the model as "Level 4 MIL-DTL-46100." It is undisputed that MIL-46100 is not adequate to be used in body armor and is certified using a different test than Level 4, which is an NIJ certification used for body armor.

Plaintiffs initially alleged that AMW and D&F were liable for Parker's death because they improperly bent and cut the steel, rendering it unfit for its intended use as body armor. (Doc. 163, ¶ 13–16). Plaintiffs assert, however, that this basis for their claims is separate from the basis for their strict liability and breach of warranty claims. (Doc. 176, ¶ 13). The Plaintiffs have not come forward with any evidence to support the theory that AMW and D&F's cutting or bending the steel created weak, hard, or brittle spots that caused Parker's injuries. *See* Doc. 163, ¶¶ 19–22; Doc. 176, ¶¶ 19–22. AMW and D&F further argue that they are not liable because the statute of limitations for negligence has run, they were not given proper notice of the breach of warranty claims, and Parker Lynch

was, as a matter of law, more than 50 percent responsible for his injuries. (Doc. 162, p. 1).

In their Response, Plaintiffs continue to maintain that AMW and D&F are liable for Parker's injuries under each cause of action, arguing the product-liability statute of limitations should apply to all claims here, AMW and D&F are suppliers and still liable for defects within the chain of commerce, they provided proper notice for the breach of warranty claims, and AMW and D&F have not shown Parker Lynch was comparatively negligent as a matter of law. (Doc. 170, pp. 2, 3, 7, 8).  AMW and D&F replied that Plaintiffs conceded the lack of proof to support their theory of liability based on improper cutting and bending, that Plaintiffs cannot interject a new theory of liability at this stage and that the new theory would fail regardless, and Plaintiffs failed to rebut the alternative arguments for summary judgment. (Doc. 178, p. 2).

## B. PROCEDURAL HISTORY

The original complaint (Doc. 1) in this case was filed February 6, 2021, in the Western District of Texas Waco Division. That complaint was brought against Defendants James Tames d/b/a Black Diamond Body Armor, Black Diamond JA LC, Leeco Steel, LLC, D&F Equipment Sales, Inc., Arkansas Machine Works, Inc., Tuff Coat LLC d/b/a Bullet Liner NWA, LLC, and Nucor Corp. On October 14, 2022, Judge Albright found that the Western District of Texas did not have personal jurisdiction over Defendants Leeco, AMW, D&F, and Nucor (the steel manufacturer), and accordingly transferred the claims against these defendants to the District of Arizona. *See* Doc. 77, p. 8.

On January 13, 2023, nearly two years after the original complaint was filed, the Arizona District Court transferred the claims against Defendant Nucor to the Western

District of North Carolina,  and the claims against Defendants Leeco, AMW, and D&F were transferred here. *See* Doc. 111. In March 2023, this Court set the case for jury trial to commence on February 12, 2024. *See* Doc. 128.

Plaintiffs filed their operative complaint on May 23, 2023 (Doc. 140). On October 16, 2023, AMW and D&F filed a Motion for Summary Judgment (Doc. 161).[3]  Plaintiffs responded (Doc. 169) on October 30, 2023, and AMW and D&F replied on November 6, 2023. This Court previously ruled that Arkansas law applies to the substantive claims in this case. *See* Doc. 143.

## II.  LEGAL STANDARD

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Subpart (a) to Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

---

[3] Leeco also filed a Motion for Summary Judgment and a Motion to Strike Plaintiff's Expert on October 16, 2023 (Docs. 156 & 159). Plaintiffs filed a Partial Motion for Summary Judgment against Leeco that day as well (Doc. 164). These motions will be addressed by separate order.

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factfinder can reasonably reach a conclusion if that conclusion is based on sufficient probative evidence and not on mere speculation, conjecture, or fantasy." *Singleton v. Ark. Hous. Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 934 F.3d 830, 835 (8th Cir. 2019) (internal quotations omitted).

## III. DISCUSSION

AMW and D&F moved for summary judgment, arguing: (a) all Plaintiffs' claims fail as a matter of law for lack of an essential element of proof,  specifically that Plaintiffs have provided no expert evidence to support their theory that  AMW and D&F's cutting and bending the steel contributed to Plaintiffs' injury; (b) Plaintiffs' negligence claim is barred by the statute of limitations; (c) Plaintiffs failed to provide pre-suit notice of the breach of warranty claim; (d) there is no evidence of an express warranty; and (d) that Parker Lynch, as a matter of law, was more than 50 percent responsible for his death. (Doc. 161, pp. 2–3).

### A.  The Cutting and Bending of Steel Were Not
### Causes of Plaintiffs' Injuries

As their primary basis for summary judgment, AMW and D&F argue that Plaintiffs have failed to provide sufficient evidence to create a genuine issue of material fact as to whether AMW/D&F's cutting and bending of the steel was the cause of Plaintiffs' injuries. (Doc. 162, p. 5–9). AMW and D&F claim that because all of Plaintiffs' causes of action arise out of the theory that the cutting and bending of the steel rendered it unfit for use as body armor, none of the claims can survive in light of Plaintiffs failing to provide any

evidence to support this theory. *Id.* Plaintiffs do not contest that there is no evidence in support of this theory. *See* Doc. 163, ¶¶ 19–22; Doc. 176, ¶¶ 19–22; Doc. 170, pp. 3–5 (arguing a new theory of defect). The Court agrees.   AMW and D&F offered expert testimony to support their contention that the cutting and bending had no effect on the steel's strength and thus could not have contributed to Parker Lynch's injury, Plaintiffs offered no evidence in response.   Accordingly, the Court finds as a matter of law that AMW and D&F's cutting and bending of the steel was not a factor in Parker's death, and the Court grants summary judgment to AMW and D&F to the extent that any claims were dependent on this argument. The following sections will discuss each claim in turn.

### B. Plaintiffs' Lack of Evidentiary Support as to All Claims

#### 1. Strict Products Liability

To make out a products liability claim, "a plaintiff must prove that the product as supplied was defective so as to render it unreasonably dangerous and that such defect was the proximate cause of the accident." *Yielding v. Chrysler Motor Co.*, 301 Ark. 271, 274 (1990); *see also* Ark. Code Ann. § 16-116-101. A "defective condition" is one that "renders [the product] unsafe for reasonably foreseeable use and consumption." Ark. Code Ann. § 16-116-202(2). For a product to be "unreasonably dangerous" it must go "beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product." *Purina Mills, Inc. v. Askins*, 317 Ark. 58, 66 (1994); *see also* Ark. Code Ann. § 16-116-202(7)(A). Further, "[i]t must be shown that the product was in a defective condition at the time it left the hands of the particular seller." *Yielding*, 301 Ark. at 274 (citing *Nationwide Rentals Co. v. Carter*, 298

Ark. 97 (1989)). Plaintiffs have raised a strict products liability cause of action, but it is not entirely clear whether Plaintiffs intended to bring this strict liability claim as a manufacturing defect, design defect, or marketing defect.

In their Complaint, Plaintiffs allege that AMW and D&F are liable under a theory of strict products liability because AMW and D&F "designed and manufactured the 10x12 Shooters Cut Body Armor" (Doc. 140, p. 11), seemingly alleging a design and manufacturing defect. Plaintiffs base the strict products liability allegations on defects in AMW and D&F's cutting and bending the steel. *Id.* As established in the prior section, and as AMW and D&F note in their Motion for Summary Judgment, there is no evidence to support this theory. In response, Plaintiffs argue that AMW and D&F are still liable because—regardless of the cutting and bending—the product was defective when it left their hands. (Doc. 170, p. 4). Based on Plaintiffs' Brief in Response, the Court can identify three alleged potential defects: that the wrong type of steel was used in the armor; that the subject steel's Brinell Hardness fell below MIL-46100 standards; and that Black Diamond represented the steel as being NIJ Level 4 rated. (Doc. 170, pp. 4–6).[4]

All three theories are resolved by the conclusion that AMW and D&F are not suppliers of body armor under the statute. As AMW and D&F state in their Reply, Plaintiffs have only made conclusory allegations that AMW and D&F are "suppliers" in this case.

---

[4] In their Reply, AMW and D&F argue that Plaintiffs are barred from introducing this alternative theory at this stage in the litigation. (Doc. 178, p. 3). Plaintiffs' Complaint, however, included the factual bases for at least the first and third newly alleged defects. The Court believes that Plaintiffs' argument in their Response likely does not rise to the level of an "alternative theory" that the Eighth Circuit has warned about. *See Singleton*, 934 F.3d at 837. However, because the Court finds that Plaintiffs' new argument also fails as a matter of law, it will not discuss whether the alternative argument is improper at this stage.

*See* Doc. 170, p. 4 ("It is without question that AMW was a supplier of this plate."). AMW and D&F state, "The role played by AMW and D&F in Black Diamond's production of the body armor does not fit neatly into the structure of a typical strict-liability claim." (Doc. 178, p. 5). The Court agrees. Arkansas Code § 16-116-101 sets out strict liability for suppliers of products. And § 16-116-202 defines "supplier" to mean "any individual or entity engaged in the business of selling a product, whether the sale is for resale or for use or consumption." Here, the steel was purchased from Leeco by Black Diamond. It was Black Diamond that then hired AMW and D&F to cut and bend the steel. There is no evidence that AMW and D&F sold either steel or body armor to Black Diamond. And it defies logic to suggest that AMW and D&F sold or supplied the steel to Black Diamond, when Black Diamond purchased the steel, then provided it to AMW and D&F to provide the service of cutting and bending—per Black Diamond's specifications.

Even if AMW and D&F were suppliers, the requirements for strict liability are not met. If the product in question is body armor, then the first requirement fails as a matter of law because there is no assertion or evidence that AMW and D&F were "in the business of manufacturing, assembling, selling, leasing, or otherwise distributing" such a product. § 16-116-101(a). If the product in question is steel plates, then the second requirement fails as a matter of law because there is no assertion or evidence that the steel plates "*as supplied* w[ere] defective so as to render [them] unreasonably dangerous" *Yielding*, 301 Ark. at 274 (emphasis added); it was not until the steel plates became body armor that they became dangerous.

Accordingly, § 16-116-101, "Liability of Suppliers," does not apply to AMW and D&F, Plaintiffs' later-asserted theories fail as a mater of law,[5] and the Court grants AMW and D&F's Motion for Summary Judgment on strict liability.

### 2. *Negligence*

As a threshold matter, AMW and D&F argue that the negligence claim fails as a matter of law because the statute of limitations has run. AMW and D&F argue that the Court should consider the statute of limitations to have started running when the last negligent act occurred (the "occurrence rule") in accordance with Ark. Code Ann. § 16-56-105; *Grand Valley Ridge, LLC v. Metro. Nat. Bank*, 2012 Ark. 121, at *18 (2012). Plaintiffs respond that, because the facts supporting the negligence cause of action derive from products liability, the statute of limitations should run from the date of the injury (the "discovery rule") per Ark. Code Ann. § 16-116-203. While the Court agrees with AMW and D&F that Arkansas courts are strict about not modifying the general-occurrence statute of limitations, *see* Doc. 162, p. 4 (citing, *inter alia*, *Bank of the Ozarks, Inc. v. Ford Motor Co.*, 2020 Ark. App. 231, at 7 (2020)), it ultimately agrees with Plaintiffs that the products liability statute of limitations should apply here.

To start, § 16-116-203 states that "[a]ll product[s] liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." The statute does not distinguish between strict liability and negligence theories, but defines such actions to "include[ ] *all* actions brought for or on

---

[5] The second theory, regarding the Brinell Hardness of the subject plates, would have also failed because Plaintiffs did not create a genuine issue of material fact as to whether the alleged defect in hardness could have been the cause of Parker's injuries. The third theory, regarding Black Diamond marketing the body armor as NIJ-4 rated, would also fail because that defect did not exist at the time the steel left Separate Defendants' hands.

account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product." Ark. Code Ann. § 16-116-202 (emphasis added). Adjacent case law also supports such a reading. For example, in *Martin v. Arthur*, the Arkansas Supreme Court held that "in product[s] liability cases, the statute of limitations under [§ 16-116-203] does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." 339 Ark. 149, 159.[6] In restating the statute of limitations, court similarly did not distinguish between products liability actions brought under strict liability or negligence theories.

Additionally, this Court's prior analyses about the scope of the term "product[s] liability action" as defined by Arkansas statute came to the conclusion that "[u]nder the plain language" of § 16-116-202, "a 'product[s] liability action' is defined not by the substantive legal theory under which the plaintiff proceeds but rather by the factual scenario that gives rise to the plaintiff's claim and injury that results from the conduct of the defendant. The term encompasses 'all' actions that otherwise meet the strictures of its definition." *Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056, 1059 (W.D. Ark. 2009); *see also J&B Tankers, Inc. v. Navistar Int'l Corp.*, 2021 WL 5748041, at *2 (E.D. Ark. Dec. 2, 2021) ("[T]he limitation period for Plaintiffs' negligence and strict [products] liability claims started when [Plaintiffs] knew of or should have discovered the connection between the [product] and Plaintiffs' alleged damages."). The Court believes that, per the statutory

---

[6] At the time of the courts' opinions in *Martin* and *Fields*, the relevant sections were § 16-116-103 and § 16-116-102. The products liability statute has since been recodified and the relevant sections are now § 16-116-203 and § 16-116-202, respectively.

language and available case law,[7] it is likely that negligence products liability claims fall under § 16-116-203 and will, therefore, decide summary judgment on other grounds.

Negligence requires: "(1) the existence of a duty on the part of the defendant to conform to a specific standard of conduct . . . ; (2) breach of that duty . . . ; (3) injury to the plaintiff actually and proximately caused by the defendant's breach; and (4) resulting damages to the plaintiff or his property." *Peregrine Trading, LLC v. Rowe*, 2018 Ark. App. 176, at *17 (2018).

Here, Plaintiffs allege that AMW and D&F were negligent because they "knew or should have known the dangers of improper cutting and improper bending of steel, namely that it creates weak, hard, and brittle spots." (Doc. 140, p. 11). Plaintiffs state that AMW and D&F "breached their duty in one or more of the following ways: (a) Failing to properly design the MIL-A-46100 steel body armor; (b) Failing to properly manufacture the MIL-A-46100 steel into body armor; (c) Failing to adequately test the MIL-A-46100 steel; (d) Failing to properly cut the [steel] into body armor; (e) Failing to properly bend the [steel] into body armor; [and/or] (f) In damaging the [steel] rendering it unsafe for its intended purpose." (Doc. 140, p. 12). In short, all of Plaintiffs' theories of breach rely on AMW and D&F being negligent in the way they cut or bent the steel. *See also* Doc. 163, ¶¶ 14–15; Doc. 176, ¶¶ 14–15 (Plaintiffs agreeing with AMW and D&F's characterization of their negligence claim as relying on the argument that the steel was cut and/or bent improperly). Plaintiffs do not dispute and provide no evidence to rebut that AMW and D&F's cutting and bending the steel did not affect the steel's ability to repel the bullet.

---

[7] While *Bank of the Ozarks* does apply the occurrence rule to a negligence products liability claim, as AMW and D&F point out, that case is not binding on this Court. And the Court believes it is contrary to the plain language of the statute. 2020 Ark. App. 231.

Because Plaintiffs have failed to meet proof with proof regarding whether AMW and D&F's cutting and bending of the steel contributed to Plaintiffs' injuries, the Court grants AMW and D&F's Motion for Summary Judgment on Plaintiffs' negligence claim.

### 3.   Breach of Warranty

In their Complaint, Plaintiffs allege breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranty. AMW and D&F's primary challenge to these claims is that Plaintiffs failed to give AMW and D&F adequate pre-suit notice of their intention to file claims for breach of warranty as is required by Ark. Code Ann. § 4-2-607. Plaintiffs counter, stating they provided adequate notice due to the original filing of the suit, notice being given to Black Diamond, and an email (attached as exhibit) sent from Plaintiffs' attorney to AMW and D&F notifying them of their intent to file an amended complaint asserting breach of warranty claims, which was sent the day the amended complaint was filed. Whether notice is sufficient is ordinarily a question of fact. *Cotner v. Int'l Harvester Co.*, 260 Ark. 885, 889 (1977). The reason for requiring notice is "that the seller be informed that the buyer proposes to look to him for damages for breach"; it must "directly or inferentially, inform the seller that the buyer demands damages upon an asserted claim of breach of warranty." *Id.* "Where a manufacturer or seller is never advised of a claimed breach of

implied warranty or that the buyer is looking to it for compensation or reimbursement, there is not a notification sufficient to hold the manufacturer or seller liable." *Id.*

Plaintiffs allege breach of the implied warranty of merchantability.[8] The implied warranty of merchantability warrants "that the goods shall be merchantable" if the "seller is a merchant with respect to goods of that kind." Ark. Code Ann. § 4-2-314. "Merchant" is defined as a "person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved." Ark. Code Ann. § 4-2-104. "Goods" are defined as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities . . . and things in action." § 4-2-105. To be merchantable, goods must

> (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity  within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

*Id.* In short, the "implied warranty of merchantability is breached when a product is not suited for its ordinary purpose." *Purina Mills*, 317 Ark. at 65.

Here, there is a question about what the "ordinary purpose" of the steel was. Based on the assertions in Plaintiffs' Complaint and the undisputed facts, AMW and D&F are

---

[8] The parties do not cite, and this Court was unable to find, a case where a complaint (that did not originally include a breach of warranty claim) properly served as the "notice" under this statute, nor any case where an email sent the day a complaint was filed served as the proper notice. Setting that threshold issue aside, the Court nevertheless finds that Plaintiffs' breach of warranty claims still fail as a matter of law for failure to prove an essential element of the claim.

"merchants dealing in the cutting, bending, and manufacturing of steel products," (Doc. 140, p. 12), and were hired to "cut and bend the sheets of MIL-A-46100 steel that Black Diamond purchased from Leeco into the shape of body armor panels." (Doc. 163, ¶ 10; Doc. 176, ¶ 10). It is not alleged, and there is no evidence to support, that AMW and D&F were merchants of body armor. Rather, it appears that AMW and D&F provided a service for Black Diamond: the cutting and bending of the steel into shapes specified by Black Diamond. Thus, because it is undisputed that (i) AMW and D&F fabricated the steel plates as specified by Black Diamond, and (ii) their work did not exacerbate the injury that occurred, there is no issue of fact as to whether AMW and D&F breached the implied warranty of merchantability.

A seller breaches the implied warranty of fitness for a particular purpose when "at the time of contracting," the seller, "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," and the goods fail to be fit for that purpose. Ark. Code Ann. § 4-2-315. Plaintiffs alleged in their Complaint that AMW and D&F breached their "implied warranty when they produced a product that was defective, and unfit for use as body armor, because after AMW and D&F cut and bent the steel, the steel contained weak, hard, and brittle spots rendering it unsafe and unreasonably dangerous for use as body armor." (Doc. 140, p. 13). Again, the proof before the Court is undisputed that AMW and D&F's cutting and bending had no effect on the steel plates' vulnerability to being perforated by a bullet. Further, there is no evidence that AMW and D&F had reason to know of Black Diamond's intended purpose or that Black Diamond was relying on AMW and D&F's skills or judgment in furnishing the goods.

15

Finally, an express warranty is created by:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . . (b) Any description of the goods which is made part of the basis of the bargain . . . . (c) Any sample or model which is made part of the basis of the bargain.

Ark. Code Ann. § 4-2-313. Plaintiffs' allege in their complaint that AMW and D&F "breached their express . . . warranty" by producing a "product that was defective" because AMW and D&F's cutting and bending the steel made it weak, unsafe, and unreasonably dangerous. (Doc. 140, p. 13). AMW and D&F respond that there is no evidence of any express warranty by AMW or D&F. (Doc. 162, p. 1–2). Though Plaintiffs dispute whether AMW and D&F provided an express warranty that formed the basis of the bargain, *see* Doc. 176, ¶ 18, they neither point to nor provide evidence to support this dispute. Because Plaintiffs have failed to provide any evidence that AMW and D&F made an express warranty, this claim fails as a matter of law.

In sum, because there is no evidence that AMW and D&F failed to provide a merchantable product, or one that was unfit for the purposes of which they were aware, and because there is no evidence of any express warranty, the Court grants summary judgment to AMW and D&F on all breach of warranty claims.

### 4.  *Vicarious Liability, Wrongful Death, and Survival Action*

Though these causes of action were not explicitly briefed, they are encompassed by AMW and D&F's argument that "[a]ll of Plaintiffs' claims . . . fail as a matter of law for lack of proof of an essential element." (Doc. 162, p. 5). The vicarious liability and wrongful death causes of action can only survive to the extent that there is a claim left from which they can derive. *See Hartford Ins. Co. of Midwest v. Mullinax*, 336 Ark. 335, 344 (1999) ("Imputed or vicarious liability is tied to the negligence of the employee. When the

16

employee has been released or dismissed and the employer has been sued solely on a theory of vicarious liability, any liability of the employer is likewise eliminated."); *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 475 (2004) ("[W]here the underlying tort action is no longer preserved, the wrongful death action is barred as well."). And, as pled, the survival action claim only survives to the extent it derives from another wrong. *See* Doc. 140, p. 15 ("Decedent had a cause of action for personal injury against Defendants before death. Decedent would have been entitled to bring a claim against Defendants should he have lived."); Ark. Code Ann. § 16-62-101(a)(1) ("For wrongs done to the person or property of another, an action may be maintained . . . [and] may be brought . . . , after his or her death, by his or her executor or administrator."). *But see id.* § 16-62-101(b) ("In addition to all other elements of damages provided by law, a decedent's estate may recover for the decedent's loss of life as an independent element of damages."). Because Plaintiffs' failure to prove an essential element of the previously discussed causes of action resulted in their dismissal, Plaintiffs' claims for vicarious liability, wrongful death, and a survival action must also fail as a matter of law.

## IV. CONCLUSION

To conclude, for the foregoing reasons, **IT IS ORDERED** that AMW and D&F's Motion for Summary Judgment (Doc. 161) is **GRANTED**. All of Plaintiffs' claims against AMW and D&F are dismissed with prejudice.

**IT IS SO ORDERED** on this 19th day of December, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

17